Jon Yard Arnason (JA-1882)
Tracy L. Klestadt (TK-3591)
KLESTADT & WINTERS, LLP
292 Madison Avenue, 17th Floor
New York, New York 10017
Tel: (212) 972-3000
Fax: (212) 972-2245

Attorneys for International Lease Finance Corporation

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | x : : | An Ancillary Case Under Section 304 of the Bankruptcy Code |
| PETITION OF VICENTE CERVO, AS FOREIGN REPRESENTITIVE OF VARIG, S.A., *et al.*, | : : : : | Case No. 05-14400 (RDD) through 05-14402 (RDD) |
| Debtors in Foreign Proceedings. | : x | Jointly Administered |

**OBJECTION OF INTERNATIONAL LEASE FINANCE CORPORATION TO
FURTHER CONTINUATION OF TEMPORARY RESTRAINING ORDER**

International Lease Finance Corporation ("ILFC"), by and through its attorneys, Klestadt & Winters, LLP, as and for its objection ("Objection") to further continuation of the Temporary Restraining Order entered by this Court on June 17, 2005, in the above captioned matter, respectfully represents as follows:

**PROCEDURAL BACKGROUND**

On June 17, 2005, upon the motion (the "Motion") of Vicente Cervo ("Petitioner"), identifying himself therein as the foreign representative of VARIG, S.A. (Viacao Aerea Rio-Grandense) ("VARIG"), Rio-Sul Linhas Aereas S.A. ("Rio-Sul") and Nordeste Linhas Aereas S.A. ("Nordeste") (collectively, the "Foreign Debtors"), this Court entered a Temporary Restraining Order (the "TRO") pursuant to sections 105(a) and 304 of title 11 of the United

States Code (the "Bankruptcy Code")[1] and Rule 65(b) of the Federal Rules of Civil Procedure prohibiting creditors of the Foreign Debtors from taking any actions which would violate an order (the "Brazilian Order") entered on same date by the Commercial Bankruptcy and Reorganization Court in Rio de Janeiro, Brazil (the "Brazilian Court") and granting other related relief.

The Motion alleges that the entry of the Brazilian Order signifies the initiation of a foreign proceeding (the "Brazilian Proceeding") and, as such, seeks recognition of the Brazilian Proceeding and the initiation of an ancillary case in this Court pursuant to §304 of the Bankruptcy Code. As demonstrated below, no foreign proceeding has been commenced.

## **FACTUAL BACKGROUND**

VARIG is Brazil's largest air carrier and the largest air carrier in Latin America. VARIG's principal business is the transportation by air of passengers and cargo on domestic routes within Brazil and on international routes between Brazil and North and South America, Europe and Asia. Combined with Rio Sul and Nordeste, VARIG carries approximately 13 million passengers annually and employs approximately 14,000 full-time employees. (Declaration of Vincente Cervo ("Cervo Aff."), ¶ 3.)

As of May 31, 2005, VARIG's operational fleet of approximately 87 aircraft consisted of 76 passenger aircraft and 11 cargo aircraft, having an average age of 13.2 years. Of VARIG's 87 aircraft, 83 are operated under operating leases and 4 are operated under finance leases (Cervo Aff., ¶ 10).

ILFC currently leases the following eleven (11) aircraft (the "Aircraft") to VARIG or its subsidiary, Rio-Sul, pursuant to certain leases agreements, the details of which are listed below:

---

[1] All references are to the Bankruptcy Code unless otherwise noted.

2

| Aircraft MSN | Aircraft Type | Lessee | Lease Date | Lease Expiration |
|---|---|---|---|---|
| 24961 | B737-300 | VARIG | 10/4/1991 | 8/3/2008 |
| 28065 | B737-500 | Rio-Sul | 4/30/1998 | 4/29/2006 |
| 28201 | B737-500 | Rio-Sul | 2/20/1998 | 2/19/2006 |
| 30635 | B737-700 | Rio-Sul | 7/23/2002 | 7/22/2005 |
| 28224 | B737-700 | Rio-Sul | 8/15/2002 | 8/14/2007 |
| 26247 | B757-200ER | Varig | 8/31/2004 | 8/30/2009 |
| 26248 | B757-200ER | Varig | 9/23/2004 | 9/22/2009 |
| 26249 | B757-200ER | Varig | 11/16/2004 | 11/15/2009 |
| 26250 | B757-200ER | Varig | 12/21/2004 | 12/20/2009 |
| 28689 | B777-200ER | Varig | 11/2/2001 | 11/1/2001 |
| 28692 | B777-200ER | Varig | 11/19/2001 | 11/18/2011 |

See Affirmation of Julie Sackman made June 20, 2004 ("Sackman Aff."), ¶ 2.

Pursuant to these leases (collectively, the "Leases"), VARIG is obligated to pay, on a monthly basis, rent and maintenance reserves. The maintenance reserves are held by ILFC and used to pay for the periodic maintenance necessary for the Aircraft, and vary somewhat from month to month, based on the usage of the Aircraft. Although ILFC holds funds of VARIG and Rio-Sul, both are under an independent obligation to maintain the Aircraft on a continuous basis. (Sackman Aff., ¶ 3.)

As of June 19, 2005, VARIG and Rio-Sul were approximately $6.8 million in arrears in the payment of rent, adjusted rent and maintenance reserves. The estimated monthly rent and maintenance reserves which VARIG and Rio-Sul are obligated to pay amounts to an aggregate of approximately $3 million or more. (Sackman Aff., ¶ 5.)

# ARGUMENT

**I. Section 304(a) is not applicable as there is no "foreign proceeding" pending.**

Section 304(a) of the Bankruptcy Code states that "a case ancillary to a foreign proceeding is commenced by the filing with the bankruptcy court of a petition under this section by a foreign representative." Thereafter, the court, under section 304(b) may

> (1) enjoin the commencement or continuation of (A) any action against (i) debtor with respect to property involved in such foreign proceedings; or (ii) such property; or (B) the enforcement of any judgment against the debtor with respect to such property, or any act or the commencement or continuation of any judicial proceeding to create or enforce a lien against the property of such estate; (2) order turnover of the property of the estate, of the proceeds of such , to such foreign representative; or (3) order other appropriate relief.

A foreign debtor is only entitled to relief under section 304 if a "foreign proceeding", as defined by section 101(23) of the Bankruptcy Code, has in fact been commenced. In re Petition of David Rose, 318 B.R. 771 (Bankr. S.D.N.Y. 2004). The foreign debtor must demonstrate that the two statutory prerequisites of "foreign proceeding" and a "foreign representative" have been met before commencing a 304 proceeding. See In re Bd. of Dirs. of Multicanal S.A., 314 B.R. 486, 501 (Bankr. S.D.N.Y., 2004); see also In re Artimm , 278 B.R. 832, 838 (Bankr. C.D. Cal. 2002).

Thus, without a foreign proceeding pending, the bankruptcy court does not have the authority to enter the relief set forth in section 304, including the granting of a temporary restraining order or preliminary injunction.

Section 101(23) defines "foreign proceeding" as a

> proceeding, whether judicial or administrative, and whether or not under bankruptcy law, in a foreign country in which the debtor's domicile, residence, principal place of business, or principal assets were located at the commencement of such proceeding, for the purpose of liquidating an estate, adjusting debts by composition, extension, or discharge, or effecting a reorganization.

Contrary however to the representations of the Foreign Debtors, no proceeding complying with the requirements of the Code has been commenced, and this is clear from their papers.

Thus, the Foreign Debtors state that they have filed an "application for the commencement of reorganization proceedings" pursuant to the NBRL with the Brazilian Court. The Foreign Debtors further state that they "were not certain whether the Brazilian Court would immediately grant the judicial reorganization" (Petition Pursuant to 11 U.S.C. §304 ("304 Petition"), ¶ 36). It is thus acknowledged by the Foreign Debtors that the Brazilian Court has not granted the judicial recovery processing, and as such, it is apparent that there is no "proceeding" yet commenced in the Brazilian Court which would give rise to the protections afforded under section 304.

Under the NBRL, a proceeding is not commenced unless and until the judge grants the processing of the judicial recovery. See Section 52 of the New Bankruptcy and Restructuring Law ("NBRL") and Affidavit of Sergio Bermudes, sworn to June 17, 2005 ("Bermudes Aff."), Ex. A, p. 14. It is the judge's granting of the judicial recovery processing that commences the Brazilian bankruptcy proceeding and the action and implements the Brazilian equivalent of the automatic stay.

Under NBRL §51, the Foreign Debtors were required to file a series of documents with their application, including accounting statements, statements of assets and liabilities, and relevant financial documents. See Bermudes Aff., p. 14. It is only when that documentation is complete that the order commencing the Foreign Proceeding is entered.

As is clear from Section 51, the required information is voluminous. For example, the Foreign Debtors are required to provide the Foreign Court with "a complete list of employees,

5

containing their respective functions, salaries, indemnifications and other sums to which they are entitled, with the corresponding month and details of the values awaiting payment" (id. at p. 14). Indeed, at the initial hearing on the Foreign Proceeding held in the Foreign Court on June 17, 2005, the Foreign Debtors' counsel informed the Court that not all necessary documents had been submitted (Affirmation of Carlos Rameh made June 17, 2005 ("Rameh Aff."), ¶ 7). But it is only "[o]nce the documentation required by Section 51 of this Law is complete [that] the judge shall grant the processing of the judicial recovery" (Bermudes Aff., Ex. A, p. 14).

It is thus clear that the Foreign Debtors have not their burden of establishing that the Brazilian Court has granted the judicial recovery processing, which would commence the foreign bankruptcy proceeding. Since a validly commenced Foreign Proceeding is not in place, a 304 proceeding cannot be commenced and this Court has no jurisdiction to grant relief such as the Temporary Restraining Order.

Further Proof that a Foreign Proceeding has not been commenced in the Brazilian Courts is provided by the action commenced by the Foreign Debtors in Brazil. As set forth above, the "automatic stay" goes into effect under the NBRL upon the granting of the judicial recovery processing (NBRL § 52, Bermudes Aff., Ex. A, p. 14). However, contemporaneously with the filing of the application for the judicial recovery processing, the Foreign Debtors also filed an *ex parte* application for interim relief in the form of a "medida liminar", which is comparable to a temporary restraining order (Cervo Aff., ¶ 36). If the bankruptcy proceeding were commenced in the Brazilian Court, as stated by the Foreign Debtors, there would be no need for this *ex parte* application as the relief requested is automatically granted under the NBRL.

6

Furthermore, there is no evidence that the Brazilian Court has appointed the Judicial Administrator, as automatically required upon the granting of the commencement of a proceeding under the NBRL (NBRL, §52).

It is clear that a necessary predicate for the commencement of a case under section 304 is the commencement of a foreign proceeding. See In re Bd. of Dirs. of Multicanal S.A., 314 B.R. 486, 501 (Bankr. S.D.N.Y., 2004); see also In re Artimm , 278 B.R. 832, 838 (Bankr. C.D. Cal. 2002). Although a "foreign proceeding" may be eventually established in this matter upon the granting of the judicial recovery processing by the Brazilian Court, until such time, this Court has no authority to issue orders granting the relief set forth in section 304. Since the Brazilian Court has not yet granted the Foreign Debtors the right to proceed with the judicial recovery processing, there is no foreign proceeding and the Foreign Debtors' application for a temporary restraining order and preliminary injunction must be dismissed in all respects.

It must be noted and emphasized that although a Foreign Proceeding has not been commenced, the Foreign Debtors could still seek to have the Brazilian Order recognized in this country under principles of comity. See Hilton v. Guyot, supra 159 U.S. 113, 202-03 (1895). However, this Court does not have the authority to grant comity absent a properly commenced 304 proceeding. See Finanz AG Zurich v. Banco Economico S.A., 192 F.3d 240, 246 (2d Cir. 1999). Rather application must be made to the United States District Court or the New York Supreme Court to obtain such relief. Id.

**II. A Foreign Representative has not yet been appointed.**

Pursuant to section 304 of the Bankruptcy Code, the case ancillary to the foreign proceeding is filed by the foreign representative. Pursuant to section 101(24), a "foreign

7

representative" is defined as a "duly selected trustee, administrator, or other representative of an estate in a foreign proceeding.

Section 52 of the NBRL states that, upon the granting of the judicial recovery processing, the court will appoint a judicial administrator as set forth in section 21 of the NBRL. Section 21 sets forth the activities which the judicial administrator will oversee in the event of a judical recovery processing or the adjudication of a bankruptcy. In essence, the judicial administrator has the duties of a trustee in the United States. As the Brazilian Court has not yet granted the judicial recovery processing, a judicial administrator has not yet been appointed by the court.

The Foreign Debtors have filed this action by their "foreign representative," the Petitioner. According to the Motion, "the Foreign Debtors passed a resolution appointing the Petitioner as their foreign representative with authority and directions to, among other things, apply to this Court for relief in aid of the Foreign Proceedings in the Brazilian Court" (see Declaration of Vicente Cervo, dated June 17, 2005("Cervo Aff"), ¶ 2). The Foreign Debtors have not submitted any support to establish the legal basis for the Petitioner's authority to file this instant action. The NBRL sets forth a process for the appointment of the judicial administrator, and the Foreign Debtors have not established that the appointment of the Petitioner qualifies him as the representative of the estate. In fact, the NBRL seems to indicate that the judicial administrator is the representative of the estate (Rameh Aff., ¶ 10). Further, as a result of the judicial administrator under NBRL, it appears that the Petitioner does not fall within the definition of a foreign representative under section 101(24).

Since the foreign bankruptcy proceeding has not yet been commenced under the NBRL, and since the NBRL establishes the judicial administrator as the "trustee" under Brazilian bankruptcy law, then it is respectfully submitted that the petition filed by Petitioner is not proper

and must be dismissed. At the very least, the Foreign Debtors have not met their burden establishing all the predicates for the commencement of a 304 proceeding.

**III. The ILFC Leases are Mercantile Leases of Aircraft and thus are not subject to the Brazilian Bankruptcy case.**

The temporary restraining order already obtained and now sought to be extended is based on a false premise: namely that aircraft operating leases are subject to a Brazilian bankruptcy proceeding so that a lessor is subject to the stay in that proceeding. However, this is not the case.

As set forth in the Rameh Affirmation (¶¶ 11-18), the term "mercantile lease"[2] found in Section 199 of the NBRL covers both finance and operating leases.[3] Thus, aircraft lessors are afforded protection similar to that found in Section 1110, in that the leases are outside of a Brazilian bankruptcy proceeding. A lessor is then free to exercise its rights under the lease, including repossession, if the lessee is in default thereunder.

Although the Foreign Debtors argued to the Foreign Bankruptcy Court that operating leases (which include nearly all the Foreign Debtors' leases) are not mercantile leases (Bermues Aff., Ex. B, pp. 4-6), this is simply incorrect, and the Foreign Bankruptcy Court made no finding to that effect (Bermudes Aff., Ex. C).

It is respectfully submitted that operating leases are included in the term "mercantile leases" so that ILFC will not be subject to any stay under the Foreign Bankruptcy Proceeding. It is therefore improper to subject it to a TRO as sought by the Foreign Debtors.

---

[2] The Foreign Debtors incorrectly translate [Portuguese Term] as "finance leasing contract" because a [Portuguese Term] covers both finance and operating leases (infra, p. 9), the correct translation would be "mercantile lease".

[3] An "operating lease" is a lease where the lessee has no option to purchase the aircraft or, if it does, its economic interest in the leased property is such that the lessor remains the owner of the property. A "financing lease" contains no such option, and is in fact a "security agreement" for the purposes of, e.g., the Uniform Commercial Code. The ILFC Leases are operating leaes.

**IV. The Foreign Debtors should be Required to Become and Remain Current on Monthly Rental Expenses to Preserve Domestic "Notions of Justice"**

(A) Exceptions to "Universality"

It is well settled law that courts in the Second Circuit, as well as most courts across the country, now embrace a "universality" approach to international insolvency proceedings. See In re Hamilton, 240 F.3d 148, 153 (2d Cir. 2001); see also, In re Hourani, 180 B.R. 58, 64 (Bankr. S.D.N.Y. 1995). "Universality" is commonly defined in terms of a primary proceeding in a debtor's domiciliary country, with ancillary proceedings in other jurisdictions where the presence of assets or other matters require local assistance to the primary court. Universality places an emphasis on deference, through comity, to foreign insolvency proceedings. It is contrasted with "Territoriality" or the "Grab Rule" which describes the process whereby courts in each national jurisdiction sequester the property of a multinational in default and distribute it according to local rules. Id.

While this nation's preparedness to grant deference to the laws and proceedings of other nations is considerable, it is not unlimited. Deference should only be given to those insolvency proceedings that provide a reasonable degree of certainty that the consideration of all parties' rights will be fair and impartial. See Philadelphia Gear Corp. v. Philadelphia Gear De Mexico, 44 F.3d 187, 191 (3d Cir. 1994) ("[A] court may, within its discretion, deny comity to a foreign judicial act if it finds that the extension of comity "would be contrary or prejudicial to the interest of the" United States). If, after a review and analysis of both substantive and procedural aspects of non-U.S. law, it is found that the foreign proceedings are in keeping with U.S. notions of justice, deference to those proceedings is warranted by comity. See All State Life Ins. Co. v.

Linter Group Ltd., 994 F.2d 996, 998-1000 (2d Cir.) cert. denied 126 L. Ed. 2d 334, U.S., 114 S. Ct. 386 (1993); see also, In re Hourani, 180 B.R. 58, 64 (Bankr. S.D.N.Y., 1995)

To the extent a domestic court determines that the prospective results of strict application of the rules of the foreign proceedings are in conflict with such "notions of justice", it has been established that a bankruptcy court acting pursuant to section 304(b) "is free to broadly mold appropriate relief in near blank check fashion." In re Culmer, 25 Bankr. 621, 624 (Bankr. S.D.N.Y. 1982); In re Axona Int'l Credit & Commerce Ltd., 88 Bankr. 597, 606 (Bankr. S.D.N.Y. 1988), aff'd, 115 Bankr. 442 (S.D.N.Y. 1990), appeal dismissed, 924 F.2d 31 (2d Cir. 1991). In re Hourani, 180 B.R. 58, 64 (Bankr. S.D.N.Y., 1995.

(B) ILFC's Rights as an Aircraft Lessor are not Protected

Because the Brazilian bankruptcy law provides rights similar to those granted by Section 1110 to aircraft lessors, any extension of comity – and the granting of a TRO – should be conditioned upon granting to ILFC equivalent rights to those it would under Section 1110.

11 U.S.C. §1110(a)(1) provides that

> [e]xcept as provided in paragraph (2) and subject to subsection (b), the right of a secured party with a security interest in equipment described in paragraph (3), or of a lessor or conditional vendor of such equipment, to take possession of such equipment in compliance with a security agreement, lease, or conditional sale contract, and to enforce any of its other rights or remedies, under such security agreement, lease, or conditional sale contract, to sell, lease, or otherwise retain or dispose of such equipment, ***is not limited or otherwise affected by any other provision of this title or by any power of the court.*** (emphasis added).

11 U.S.C.S. § 1110(a)(1).

In a case initiated under the U.S. Bankruptcy Code where the debtor-airlline is a United States citizen, it will have sixty days under §1110 to determine whether or not to retain a leased aircraft. If the debtor decides to retain the aircraft, it must cure all defaults and agree under §1110 to perform its lease obligations within the cure period provided in §1110. By the enactment of §1110 and the subsequent expansion of its scope with the 1994 amendments to the Bankruptcy Code, Congress recognized the unique nature of the airline industry aircraft leases and the importance of protecting the rights of lessors with respect to same. The fact that no other industry enjoys the same kind of unique protection under the Bankruptcy Code serves as a statement as to how critically important the creditors' rights afforded thereunder were deemed by Congrress to be.

As discussed above, the ILFC Lease are mercantile leases and thus exempt from any Brazilian bankruptcy proceeding.

Accordingly, ILFC requests that, to the extent this Court grants further continuation of the TRO, that language be included therein that conditions its application to ILFC on the Foreign Debtors curing past defaults and paying current rent going forward.

**V. The Scope of Proposed Injunction is Too Broad**

Section 304 contemplates that a U.S. court will assist in the collection of assets in the United States and stay law suits commenced in the United States. See In re Rukavina, 227 B.R. 234, 238 (Bankr. S.D.N.Y., 1998). The Foreign Debtors however seek a worldwide injunction against repossession of assets which purports to apply to persons wherever located. (Cervo. Aff., ¶ 43; Motion, pp. 2,8,11.)

This excessive scope is improper. To the extent the Foreign Debtors believe injunctive relief is necessary in another jurisdiction because the Brazilian Injunction does not extend to that

12

jurisdiction, relief should be sought there. This Court should not, in an ancillary proceeding, be the vehicle for obtaining injunctive relief in another jurisdiction in derogation of the laws of that jurisdiction.

**VI. The Foreign Debtors Should be Required to Post Security Pursuant to Fed.R.Civ.P. 65(c)**

Rule 65(c) of the Federal Rules of Civil Procedure, made applicable by Bankruptcy Rule 7065, provides, in relevant part:

> No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.

Fed.R.Civ.P. 65(c).

To the extent this Court deems any further continuation of the TRO effective as to the rights of ILFC to collect all past due and amounts currently owing by the Foreign Debtors with respect to the Leases, ILFC requests that the Foreign Debtors post a bond in such sum as this Court deems proper to adequately protect its interests.

ILFC believes that this amount, at a minimum, will adequately protect its rights in the event ILFC is later deemed to have been wrongfully enjoined or restrained as a result of such continued TRO.

WHEREFORE, ILFC respectfully requests that this Court deny the Foreign Debtors' Motion for further continuation of the TRO; deny any and all relief sought by the Foreign Debtors pursuant to §304 of the Bankruptcy Code as no "foreign proceeding" has been commenced; and/or, exclude ILFC from the application of the TRO; and/or require payment of

13

past due and current rent as a condition of extending the TRO; and/or require the Foreign Debtors to post a bond in such sum as this Court deems proper as security for the reasons set forth herein; and grant such other and further relief as this Court deems proper.

Dated: New York, New York
      June 20, 2005

      Respectfully submitted,

      KLESTADT & WINTERS, LLP
      Attorneys for International Lease
      Finance Corporation

      By: /s/Jon Yard Arnason
           Jon Yard Arnason (JA-1882)
           Tracy L. Klestadt (TK-3591)
      292 Madison Avenue, 17th Floor
      New York, New York 10017
      Tel: (212) 972-3000
      Fax: (212) 972-2245